Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
8360 E. Raintree Drive, Suite 140
Scottsdale, AZ 85260

Telephone: (602) 482-4300
Facsimile:  (602) 569-9720
email: davis@scottdavispc.com

*Attorney for Plaintiff Patricia Ames*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Patricia Ames,<br><br>        Plaintiff,<br><br>    v.<br><br>The Standard Insurance Company; Midwestern University; Midwestern University Group Long Term Disability Insurance Plan,<br><br>        Defendants. | Case No.<br><br>**COMPLAINT** |

Now comes the Plaintiff Patricia Ames (hereinafter referred to as "Plaintiff"), by and through her attorney, Scott E. Davis, and complaining against the Defendants, she states:

***Jurisdiction***

1. Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits. In addition, this action may be brought before this Court pursuant to 28

U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

*Parties*

2. Plaintiff is a resident of Maricopa County, Arizona.

3. Upon information and belief, Midwestern University (hereinafter referred to as the "Company") sponsored, administered and purchased a group long term disability insurance policy which was fully insured by The Standard Insurance Company (hereinafter referred to as "Standard"). The specific group long term disability insurance policy is known as group policy number 135480-A (hereinafter referred to as the "Policy"). The Company's purpose in sponsoring, administering and purchasing the Policy was to provide long term disability insurance for its employees. Upon information and belief, the Standard Policy may have been included in and part of an employee benefit plan, specifically named the Midwestern University Group Long Term Disability Insurance Plan (hereinafter referred to as the "Plan") which may have been created to provide the Company's employees with welfare benefits. At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

4. Upon information and belief, Standard functioned as the claim administrator of the policy; however, pursuant to the relevant ERISA regulation, the Company and/or the Plan may not have made a proper delegation or properly vested fiduciary authority or power for claim administration in Standard.

5. Plaintiff alleges Standard operated under a conflict of interest in evaluating her long term disability claim due to the fact that it operated in dual roles as the decision maker with regard to whether Plaintiff was disabled as well as the payor of benefits.

Standard's conflict existed in that if it found Plaintiff was disabled, it was then liable for the payment of her disability benefits.

6. The Company, Standard and the Plan conduct business within Maricopa County and all events giving rise to this Complaint occurred within Arizona.

*Venue*

7. Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

*Nature of the Complaint*

8. Incident to her employment, Plaintiff was a covered employee pursuant to the Plan and the relevant Policy and a "participant" as defined by 29 U.S.C. §1002(7). Plaintiff seeks disability income benefits from the Plan and the relevant Policy pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B), as well as any other employee benefits she may be entitled to from the Company, the Plan and any other Company Plan as a result of being found disabled in this action.

9. After working for the Company as a loyal employee, Plaintiff became disabled on or about July 16, 2013, due to serious medical conditions and was unable to work in her designated occupation as a Senior Administrative Assistant. Plaintiff has remained disabled as that term is defined in the relevant Policy continuously since that date and has not been able to return to any occupation as a result of her serious medical conditions.

10. Following her disability, Plaintiff filed a claim for short term disability benefits which was approved by Standard, and those benefits have been paid and exhausted. Following the exhaustion of her short term disability benefits, Plaintiff then filed for long

1  term disability benefits under the relevant Policy which was administered by Standard,
2  meaning it made the decision with regard to whether Plaintiff was disabled.

3  11.  The Standard Policy provides the following definition of disability pertaining
4  to long term disability benefits:

Disability or Disabled is either:
- for the Elimination Period and for the Normal Occupation Period, being unable due to sickness, bodily injury, or pregnancy to perform with reasonable continuity the Material Duties of your Normal Occupation; and

   for the Any Occupation Period, being unable due to sickness, bodily injury, or pregnancy to perform with reasonable continuity the Material Duties of any occupation for which you are reasonably qualified by education, training, or experience; or

- after you have been continuously Disabled for the Elimination Period, working, but due to sickness, bodily injury, or pregnancy being unable to earn 80% or more of your Increasing Monthly Wage Base.

12.  In support of her claim for long term disability benefits, Plaintiff submitted to Standard medical evidence which supported her allegation that she met any definition of disability as defined in the relevant Policy.

13.  As a part of its review of Plaintiff's claim for long term disability benefits, Standard obtained a medical records only "paper review" from a physician of its choosing, Ronald Fraback, M.D.

14.  Plaintiff alleges Dr. Fraback is a long time medical consultant and/or employee of Standard and/or for the disability insurance industry.  As a result, Plaintiff alleges Dr. Fraback may have an incentive to protect his employment with Standard and/or the disability insurance industry by providing medical records only paper reviews, which

-4-

selectively review or ignore evidence such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to insurance companies and which supported the denial of Plaintiff's claim.

15. In a letter dated March 7, 2014, Standard informed Plaintiff it was denying her claim for long term disability benefits.

16. Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed Standard's March 7, 2014 denial of her claim and in support of her claim for long term disability benefits, Plaintiff submitted to Standard additional medical, vocational and lay-witness evidence demonstrating she met any definition of disability set forth in the Policy.

17. Plaintiff submitted to Standard a July 15, 2014 narrative letter from her treating board certified physician who confirmed it is his medical opinion, "Given [Plaintiff's] age, her chronic medical conditions…it is reasonable to assume that she will be unable to sustain any gainful employment indefinitely."

18. Plaintiff also submitted to Standard a Functional Capacity Evaluation report dated May 14, 2014, wherein after an extensive several hour evaluation with a qualified physical therapist to determine her ability to work, they opined, "…[Plaintiff] is unable to perform any categorical work at this time, even ***sedentary***." (original emphasis).

19. Further supporting her claim, Plaintiff submitted a vocational report from a certified vocational expert dated July 25, 2014, who after reviewing Plaintiff's medical evidence and the definition of disability and interviewing Plaintiff concluded, "From a vocational perspective, it is evident that [Plaintiff] could not attain the 80% of her pre-indexed earnings given the multitude of disability factors."

20. In addition to the medical records and reports submitted to Standard, Plaintiff submitted three sworn affidavits from her father, son and daughter, who all confirmed

Plaintiff is unable to work in any occupation and that her medical condition has not improved in any way since her date of disability.

21. During the administrative review of Plaintiff's claim, she also applied for, was approved and is currently receiving Social Security disability benefits through the Social Security Administration (hereinafter referred to as "SSA").

22. In a letter dated August 28, 2014, Plaintiff informed Standard that her claim for Social Security disability benefits had been approved and she submitted to Standard a copy of her April 15, 2014 Notice of Award from the SSA. The evidence supporting Plaintiff's SSA claim was so persuasive that SSA approved her claim without her having to attend a hearing with an Administrative Law Judge.

23. On November 17, 2014, Plaintiff submitted to Standard a complete copy of her Social Security disability claim file for its consideration in her long-term disability claim.

24. The SSA found Plaintiff became disabled from engaging in any gainful occupation which may have existed in the national economy as of July 23, 2013.

25. The SSA's definition of disability is more stringent and difficult to meet than the aforementioned definition of disability in the Standard Policy during the Normal Occupation Period and substantially similar to the Policy's definition of disability during the Any Occupation Period. Therefore, the SSA's approval of Plaintiff's claim is relevant evidence for this Court to consider with regard to the reasonableness of Standard's decision to deny Plaintiff's disability claim.

26. In a letter dated October 2, 2014, Plaintiff notified Standard she believed it had misclassified her prior occupation as being in the *Sedentary* work category, as defined by the *Dictionary of Occupation Titles*. Plaintiff informed Standard that her vocational

expert reviewed the duties of the occupation she was engaged in for the Company at the time she became disabled and classified it as being in the *Light* exertional category. A *Light* exertional occupation is significantly different than and requires greater physical exertion than a *Sedentary* occupation.

27. In her October 2, 2014 letter, Plaintiff requested for Standard to properly categorize her occupation as being in the *Light* occupational category. Standard never responded to Plaintiff's letter or request.

28. As part of its review of Plaintiff's claim for long term disability benefits, Standard obtained a medical records only "paper review" from a physician of its choosing, Sushil M. Sethi, M.D. Standard did not disclose to Plaintiff the name of the reviewing physician until a final determination had been made in her claim.

29. Upon information and belief, Plaintiff alleges Dr. Sethi may be a long time medical consultant for the disability insurance industry and/or Standard. As a result, Plaintiff alleges Dr. Sethi may have an incentive to protect his own consulting relationship with the disability insurance industry and/or Standard by providing medical records only paper reviews, which selectively review or ignore evidence such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to insurance companies and which supported the denial of Plaintiff's claim.

30. In a letter dated September 4, 2014, in order to engage Standard in a dialogue so she could perfect any alleged deficiencies in her claim, Plaintiff requested a complete copy of any and all medical records only "paper reviews" from Standard and the opportunity to respond to these reviews as well as to provide them to her treating physicians for their response prior to Standard rendering a determination in her claim.

31. Prior to rendering its final denial in Plaintiff's claim, Standard never shared with Plaintiff the report authored by Dr. Sethi and never engaged Plaintiff or her treating medical providers in a dialogue so she could either respond to the report and/or perfect her claim. Standard's failure to provide Plaintiff with the opportunity to respond to Dr. Sethi's report precluded a full and fair review pursuant to ERISA. Standard's action is also an ERISA procedural violation and a violation of Ninth Circuit case law.

32. In a letter dated February 17, 2015, Standard notified Plaintiff it had denied her claim for long term disability benefits under the Policy. In the letter, Standard also notified Plaintiff she had exhausted her administrative levels of review and could file a civil action lawsuit in federal court pursuant to ERISA.

33. Upon information and belief, Standard's February 17, 2015 denial letter confirms it failed to provide a full and fair review, and in the process committed several procedural violations pursuant to ERISA due to among other reasons, completely failing to credit, reference, consider, and/or selectively reviewing and de-emphasizing most, if not all of Plaintiff's reliable evidence.

34. On March 6, 2015, Standard provided Plaintiff with a copy of the January 19, 2015 report authored by Sushil Sethi, M.D.

35. Pursuant to ERISA and Ninth Circuit case law, Plaintiff should have been provided the opportunity during Standard's review of her claim to respond to Dr. Sethi's report. Following the final administrative denial of her claim by Standard, in a letter dated June 15, 2015, in order to engage Standard in a dialogue and to cure the deficiencies it alleged existed in her case, Plaintiff submitted additional medical evidence, including a response from the physical therapist who evaluated her and the vocational expert who

-8-

1  interviewed her, and requested for Standard to reopen her claim and consider this additional
2  evidence.

3       36.    The additional evidence from Plaintiff's medical professionals is highly
4  relevant.  The physical therapist who evaluated Plaintiff and performed her Functional
5  Capacity Evaluation, provided a specific response to Dr. Sethi's report and his opinions
6  which were the basis of Standard's final denial.  In the physical therapist's response,
7  notwithstanding Dr. Sethi's report and opinions, he again opined that Plaintiff was disabled
8  and unable to work in any occupation due to her serious medical conditions.

9       37.    The vocational expert who previously interviewed Plaintiff and authored a
10 report with an opinion that Plaintiff was disabled, reiterated in an April 2, 2015 vocational
11 addendum report that Standard misclassified Plaintiff's prior occupation and confirmed that
12 Plaintiff's prior occupation should be classified as within the *Light* category, not *Sedentary*.

13      38.    In a response letter dated June 18, 2015, Standard informed Plaintiff it was
14 denying her request to reopen her claim and that it would not consider any additional
15 medical documentation as her claim was closed.

16      39.    Plaintiff alleges her June 15, 2015 letter, along with the medical
17 documentation submitted as an attachment thereto, should be part of the Administrative
18 Record and/or considered as extrinsic evidence by this Court due to Standard's ERISA
19 procedural error of not engaging her in a dialogue and allowing her to perfect/cure the
20 record.  If Standard had not committed this ERISA procedural violation, and had instead
21 provided Plaintiff with a full and fair review as required by ERISA along with following
22 Ninth Circuit case law, she would have been afforded the opportunity to provide this
23 evidence during the administrative review of her claim.

40. In evaluating Plaintiff's claim on appeal, Standard owed her a fiduciary duty and had an obligation pursuant to ERISA to administer her claim, "solely in her best interests and other participants" which it failed to do. [1]

41. Standard failed to adequately investigate and failed to engage Plaintiff in a dialogue during the appeal of her claim with regard to what evidence was necessary so Plaintiff could perfect her appeal and claim. Standard's failure to investigate the claim and to engage in this dialogue or to obtain the evidence it believed was important to perfect Plaintiff's claim is a violation of ERISA and Ninth Circuit case law, and is a reason she did not receive a full and fair review.

42. Plaintiff alleges Standard provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, failing to adequately investigate her claim; erroneously misclassifying Plaintiff's prior occupation; failing to credit Plaintiff's reliable evidence; failing to adequately consider the approval of Plaintiff's Social Security disability claim; providing one sided reviews of Plaintiff's claim that failed to consider all the evidence submitted by her and/or de-emphasizing medical evidence which supported Plaintiff's claim; disregarding Plaintiff's self-reported symptoms; failing to consider all the diagnoses and/or limitations set forth in her medical evidence as well as the impact the combination of those diagnoses and impairments would have on her

---

[1] It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

1  ability to work; failing to engage Plaintiff in a dialogue so she could submit the necessary
2  evidence to perfect her claim and failing to consider the impact the side effects from
3  Plaintiff's medications would have on her ability to engage in any occupation.

4      43.    Plaintiff alleges a reason Standard provided an unlawful review which was
5  neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to
6  its conflict of interest that manifested as a result of the dual roles Standard undertook as
7  decision maker and payor of benefits.  Standard's conflict of interest provided it with a
8  financial incentive to deny her claim.

9      44.    Plaintiff is entitled to discovery regarding Standard's aforementioned
10 conflicts of interest, potential conflicts of interest of Drs. Fraback and Sethi, as well as any
11 other individual who reviewed her claim and the Court may properly weigh and consider
12 extrinsic evidence regarding the nature, extent and effect of any conflict of interest and/or
13 ERISA procedural violation which may have impacted or influenced Standard's decision
14 to deny her claim.

15     45.    With regard to whether Plaintiff meets the definition of disability set forth in
16 the Policy, the Court should review the evidence in Plaintiff's claim *de novo*, because even
17 if the Court concludes the policy confers discretion, the unlawful violations of ERISA
18 committed by Standard as referenced herein are so flagrant they justify *de novo* review.

19     46.    As a direct result of Standard's decision to deny Plaintiff's disability claim,
20 she has been injured and suffered damages in the form of lost long term disability benefits,
21 in addition to other potential employee benefits she may have been entitled to receive
22 through or from the Plan, any other Company Plan and/or the Company as a result of being
23 found disabled.  Plaintiff believes other potential employee benefits may include but not be
24 limited to, health and other insurance related coverage or benefits, retirement benefits or a

pension, life insurance coverage and/or the waiver of the premium on a life insurance policy providing coverage for her and her family/dependents.

47. Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid benefits, prejudgment interest, reasonable attorney's fees and costs from Defendants.

48. Plaintiff is entitled to prejudgment interest at the legal rate pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate her for losses she incurred as a result of Defendants' nonpayment of benefits.

WHEREFORE, Plaintiff prays for judgment as follows:

A. For an Order requiring Defendants to pay Plaintiff her long term disability benefits and any other employee benefits she may be entitled to as a result of being found disabled pursuant to the Policy, from the date she was first denied these benefits through the date of judgment and prejudgment interest thereon;

B. For an Order directing Defendants to continue paying Plaintiff the aforementioned benefits until such time as she meets the conditions for termination of benefits;

C. For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. §1132(g); and

D. For such other and further relief as the Court deems just and proper.

DATED this 22nd day of July, 2015.

SCOTT E. DAVIS. P.C.

By: */s/ Scott E. Davis*
Scott E. Davis
Attorney for Plaintiff